**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KRISTYN EWART** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **STATE FARM MUTUAL AUTOMOBILE** | : | |
| **INSURANCE COMPANY** | : | **NO. 17-878** |

## MEMORANDUM OPINION

**Savage, J.**                                                                                        **June 6, 2017**

      In this declaratory judgment action removed from the state court calling for the interpretation of the notice and waiver requirements governing stacked coverage of uninsured motorist benefits under Pennsylvania law, the question is whether we should decline to exercise jurisdiction. At the center of the dispute is whether an automobile insurer must obtain new waivers of stacked coverage each time a car is added to a policy. Because the issue is evolving in the state courts and is unsettled, we shall decline to exercise jurisdiction and remand to the state court.

## Background

      Kristyn Ewart was injured in a single-vehicle accident on March 21, 2013.[1] At the time, she was a passenger in an uninsured vehicle.[2] She made a claim for uninsured motorist benefits under her parents' automobile insurance policy issued by State Farm Mutual Automobile Insurance Company.

      The policy was originally issued on March 22, 2006 and renewed continuously through the time of the accident. When Michael Ewart, Kristyn's father, first applied for

---

[1] Compl. (Doc. No. 5-4) ¶¶ 10–11.

[2] *Id.* ¶ 14. State Farm contends that the driver was insured, but his insurer did not cover the accident. Answer (Doc. No. 2) ¶ 14. Whether Kristyn's claim is for uninsured or underinsured motorist benefits does not affect the analysis.

the policy, he selected bodily injury coverage limits of $100,000 per person and $300,000 per accident, and lower uninsured motorist coverage limits of $15,000 per person and $30,000 per accident.[3] He rejected stacked uninsured motorist coverage.[4] Again, on May 8, 2009, he signed a form waiving stacked uninsured motorist coverage.[5] That was the last time he rejected stacked uninsured motorist coverage.

From the inception of the policy through the time of the accident, vehicles were added and removed. The policy initially covered two vehicles.[6] From October 2007 to March 2008, it covered three vehicles; from February to March 2012, one vehicle.[7] On the date of the accident, the policy covered two vehicles.[8] Michael did not sign new acknowledgements of uninsured and underinsured motorist coverage selections, and did not sign a rejection of stacked uninsured motorist coverage each time he replaced or added a new vehicle to the policy.[9]

On her claim for uninsured motorist benefits, State Farm paid Kristyn $15,000.[10] She demanded that State Farm pay her $200,000, the limits of the liability coverage

---

[3] Compl., Exs. A, B.

[4] Answer, Ex. A.

[5] *Id.*, Ex. B.

[6] Compl., Ex. A.

[7] *See id.*, Exs. C, D. There is no information how many vehicles were covered from March 23, 2008 to February 10, 2012. Nor is there any information regarding the period between March 23, 2012 and February 24, 2013.

[8] *Id.*, Ex. F.

[9] Michael signed a form rejecting uninsured motorist coverage on June 8, 2012. *Id.*, Ex. E. Maintaining that Michael had mistakenly executed the rejection of uninsured motorist coverage, State Farm did not remove uninsured motorist coverage from the policy. Answer ¶ 24. It is unclear why Michael signed the rejection form and why State Farm claims it was an error. Regardless, the form does not alter the analysis.

[10] Compl. ¶ 35.

2

stacked for the two vehicles on her father's policy. State Farm refused, relying on Michael's selection of lower uninsured motorist benefits limits and his rejection of stacked coverage when he first applied for coverage.[11]

Kristyn then filed a complaint in the Philadelphia County Court of Common Pleas. In her complaint, she seeks only a declaration that she is entitled to uninsured motorist coverage to the limit of the bodily injury liability coverage of $100,000 and stacked for the two vehicles on the policy. She calls for an interpretation of the notice and waiver requirements of the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa. Cons. Stat. § 1701 *et seq.* (MVFRL).

State Farm removed the case based on diversity jurisdiction. Kristyn moves to remand, asking us to abstain from exercising jurisdiction over an action involving only questions of Pennsylvania law. There is no pending related case in the state court.

**Analysis**

Under the Declaratory Judgment Act, a federal court "*may* declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added). As the statutory language makes clear, the federal court's subject matter jurisdiction over actions seeking declaratory relief is discretionary. *Reifer v. Westport Ins. Co.*, 751 F.3d 129, 134 (3d Cir. 2014) (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942)).

In *Reifer*, the Third Circuit answered the question whether a federal court may decline to exercise jurisdiction over a declaratory judgment action where there are no pending parallel state proceedings. It held that the existence or non-existence of

---

[11] *Id.* ¶ 36.

parallel state proceedings is only one factor to consider in deciding whether to exercise jurisdiction. *Reifer*, 751 F.3d at 144. Although the absence of pending parallel state proceedings strongly favors exercising jurisdiction, it does not require a federal court to exercise jurisdiction. *Id.* The absence of parallel state proceedings creates a rebuttable presumption in favor of exercising jurisdiction. *Rarick v. Federated Serv. Ins. Co.*, 852 F.3d 223, 226 (3d Cir. 2017).

Before declining jurisdiction, the federal court must engage in a rigorous balancing test to ensure that the lack of parallel state proceedings is "outweighed by opposing factors." *Reifer*, 751 F.3d at 144. A non-exhaustive list of those factors are:

> (1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;
> (2) the convenience of the parties;
> (3) the public interest in settlement of the uncertainty of obligation;
> (4) the availability and relative convenience of other remedies;
> (5) a general policy of restraint when the same issues are pending in state court;
> (6) avoidance of duplicative litigation;
> (7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for *res judicata*; and
> (8) (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

*Id.* at 146 (footnote omitted); *see also State Auto. Ins. Co. v. Summy*, 234 F.3d 131, 134 (3d Cir. 2000). The fifth, sixth, and eighth factors are particularly relevant in insurance coverage cases. *See Summy*, 234 F.3d at 134 (quoting *United States v. Pa., Dep't of Envtl. Res.*, 923 F.2d 1071, 1075 (3d Cir. 1991)). Whether state law is uncertain or undetermined is "especially important in insurance coverage cases." *Reifer*, 751 F.3d at 148 (quoting *Summy*, 234 F.3d at 135) (internal quotation marks omitted).

Of these factors, only the first, third, and fifth are at play. A declaration would

4

resolve the uncertainty of State Farm's obligation in this case. But, as we shall see, a decision here will not provide certainty in similar cases because the Pennsylvania courts are still developing the contours of the statutory notice requirements.

The public has an interest in a resolution of an insurer's notice obligation under Pennsylvania law. That interest will be better served by awaiting the Pennsylvania Supreme Court's pronouncement rather than issuing a federal district court's predictive decision, which will have no binding effect on Pennsylvania courts.

The most compelling factor here is the general policy of restraint when the issue is pending in the state courts. *Reifer* counsels federal district courts to refrain from deciding novel and unsettled state law claims. The Third Circuit has reminded district courts that when "state law is uncertain or undetermined, the proper relationship between federal and state courts requires district courts to 'step back' and be 'particularly reluctant' to exercise DJA jurisdiction. . . . The fact that district courts are limited to predicting—rather than establishing—state law requires 'serious consideration' and is 'especially important in insurance coverage cases.'" *Reifer*, 751 F.3d at 148 (quoting *Summy*, 234 F.3d at 135).

The parties disagree whether the issue is settled. State Farm contends it is. Kristyn argues it is not. We conclude that the issue remains unsettled.

The MVFRL requires automobile insurers to provide uninsured motorist coverage in an amount equal to the bodily injury liability limit and stacked coverage in multiple-vehicle policies, unless the insured waives those coverages or limits. 75 Pa. Cons. Stat. §§ 1731, 1738; *Weilacher v. State Farm Mut. Auto. Ins. Co.*, 65 A.3d 976, 983 (Pa. Super. 2013). The MVFRL allows an insured to request lower uninsured limits of

5

coverage. 75 Pa. Cons. Stat. § 1734. The insured may waive stacked uninsured motorist coverage by signing and returning a rejection form which complies with the MVFRL. *Id.* § 1738(d).

There is no dispute that the forms signed by Michael complied with the MVFRL. Whether State Farm obtained rejection forms as often as required is at the core of the dispute.

Pennsylvania law governing requirements for an effective waiver of coverages continues to evolve. In *Sackett I*, the Pennsylvania Supreme Court held that the addition of a new vehicle to a multi-vehicle policy constituted a purchase of new uninsured and underinsured coverage, requiring the insurer to obtain a new waiver of stacked coverage. *Sackett v. Nationwide Mut. Ins. Co.*, 919 A.2d 194, 202 (Pa. 2007) ("*Sackett I*"). On reconsideration, in *Sackett II*, the Court distinguished between insurance policies that contain finite versus open-ended after-acquired-vehicle clauses. *Sackett v. Nationwide Mut. Ins. Co.*, 940 A.2d 329, 334 (Pa. 2007) ("*Sackett II*"). *Sackett I* continued to apply to policies that cover an added vehicle for a finite number of days, requiring a new stacked uninsured motorist coverage waiver after automatic coverage expires. *Id.* If a policy provides coverage of any vehicle added during the policy period, the waiver applies to all vehicles and the insurer is under no obligation to obtain a new stacked uninsured motorist coverage waiver for the new vehicle. *Id.* In *Sackett III*, the Superior Court held that the Sacketts' insurance policy defaulted to stacked uninsured motorist coverage because the policy expressly covered their new vehicle for only thirty days and the insurer did not obtain a new rejection form for coverage after that time. *Sackett v. Nationwide Mut. Ins. Co.*, 4 A.3d 637, 641 (Pa.

6

Super. 2010) ("*Sackett III*"), *appeal denied*, 34 A.3d 653 (Pa. 2011).

At the time this case was removed, the Pennsylvania Supreme Court was poised to decide whether an insurer must obtain a new stacking waiver when second and third vehicles are added to a single-vehicle policy. *Toner v. Travelers Home & Marine Ins. Co.*, 137 A.3d 583 (Pa. Super. 2016), *appeal granted*, No. 170 WAL 2016, 2016 WL 5173510 (Pa. Sept. 8, 2016). On the eve of argument, the *Toner* case was discontinued upon praecipe of the parties. Thus, the issue remains unsettled.

Contrary to State Farm's contention, the Pennsylvania Supreme Court's anticipated decision in *Toner* would have affected the resolution of this case. *See Bransfield v. N.J. Mfrs. Ins. Co.*, Civ. No. 17-88, 2017 WL 714036, at *5–6 (E.D. Pa. Feb. 23, 2017). Here, Michael signed a waiver of stacked coverage when he first insured two vehicles with State Farm in March 2006. For reasons that are not explained, he signed another rejection of stacked coverage in May 2009. He signed no more.

At one point, he had a single-vehicle policy. In February and March 2012, State Farm insured only one vehicle. In *Toner*, the Pennsylvania Supreme Court would have had the opportunity to answer the question whether State Farm was required to obtain a waiver of stacked coverage when Michael later added, not replaced, a second vehicle to the single-vehicle policy.

State Farm argues that the *Sackett* trilogy of cases, not *Toner*, applies to the Ewarts' policy because it was originally a multi-vehicle policy, even though vehicles were added and removed later. This argument ignores that the policy became a single-vehicle one after the inception date, but before the accident date. *Toner* would have

7

settled the issue.

Because *Toner* is no longer before the Pennsylvania Supreme Court, the issue confronting us remains uncertain. It continues to percolate through the Pennsylvania courts. Having granted allocatur, the Pennsylvania Supreme Court acknowledged that the issue is unresolved. Although *Toner* is gone, the uncertainty is not.

One week after *Toner* was discontinued, the Superior Court, in a split decision, held that whenever an insured adds a vehicle to a policy, the insurer must obtain a new waiver of stacked uninsured and underinsured motorist coverage. *Pergolese v. Standard Fire Ins. Co.*, No. 1467 EDA 2014, 2017 WL 1337943, at *7 (Pa. Super. Apr. 11, 2017). The court distinguished between replacement vehicles and newly added vehicles. *Id.* at *8. In the case of a replacement vehicle, unlike an additional vehicle, there is no new purchase of coverage requiring a new waiver.

The *Pergolese* decision exemplifies how unsettled the issue is. The three-judge panel issued three opinions. It is likely that the Pennsylvania Supreme Court, as it did in *Toner*, will grant allocatur in *Pergolese* to resolve the issue.

In sum, if we retain jurisdiction, we must predict whether Pennsylvania law requires an insurer to obtain a new selection of lower uninsured motorist coverage limits and a new rejection of stacked uninsured motorist coverage when a new vehicle is added to an existing policy insuring a single vehicle. Mindful that we must be reluctant to predict what the law is where state law is uncertain or unsettled, we decline to exercise jurisdiction. *See Reifer*, 751 F.3d at 148. Therefore, we shall remand this case to the Philadelphia Court of Common Pleas.